NUMBER 13-07-467-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS


 

CORPUS CHRISTI - EDINBURG 


 


JOHNNY WYATT, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 156th District Court of Bee County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Benavides


 

 Inmate Johnny Wyatt allegedly threw urine on Correctional Officer Guadalupe
Martinez and was charged with harassment of a public servant. See Tex. Penal Code
Ann. § 22.11(a)(1) (Vernon 2003). After a jury trial, Wyatt was convicted and received
twenty years incarceration in the Texas Department of Corrections-Institutional Division,
and a $10,000 fine. (1) Wyatt appeals, challenging the legal and factual sufficiency of the
evidence supporting his conviction. We affirm.

I. Background


On May 26, 2005, Correctional Officers Guadalupe Martinez and Teresa Chavarria
were on duty at the McConnell Unit of the Texas Department of Criminal Justice in
Beeville, Texas. Officers Martinez and Chavarria were conducting rounds to see which
inmates wanted to go to recreation. They approached cell 62, which housed Wyatt, and
asked him if he would like to go to recreation. Wyatt answered, "Yes," and the officers told
him to step back against his bunk so they could perform the customary security
procedures. The officers then told him to strip down so they could check for weapons and
other prohibited materials, which was standard procedure. 

Wyatt handed his inmate fatigues to Officer Martinez, and during the customary
inmate search of the clothes, no contraband was found. Wyatt then put his clothes on and
approached the food tray slot as instructed. Officer Martinez ordered Wyatt to place his
hands through the food tray slot so that he could be handcuffed. If inmates are
Administration Segment (high risk) inmates, they are required to be handcuffed any time
they come out of their cell. Just as handcuffs were about to be administered, Wyatt
strayed from standard procedure.

According to the officers, Wyatt retracted his hands, knelt, and picked up a
Styrofoam cup full of a liquid substance. Wyatt then extended his arm back out the food
tray slot and threw the substance, which hit Officer Martinez on his pant leg. Officers
Martinez and Chavarria then left the scene of the incident, and they told the picket officer
to contact the superior officer. Officer Martinez stated he was fearful of all the diseases
that are spread throughout the prison. Officer Martinez also testified that he "was alarmed
[by] just the fact [of having urine thrown on himself] . . . ."

Officer Martinez was then relieved by another officer and sought medical attention. 
Officer Martinez testified that he wrote a statement outlining the incident, in which he
indicated he had been hit by "feces." Cell 61's food tray was secure and shut, leading to
a conclusion that cell 62 was the only plausible source of the urine throwing. However, no
cup was ever retrieved from cell 62 or from the pipe chase, a type of plug that allows an
officer or employee of the prison to open up the toilet system and retrieve an item that was
flushed down the toilet. 

At trial, Officer Martinez testified that he and Wyatt had no previous substantial
conversation, nor had Wyatt ever shown any hostility towards him. Both Officers Martinez
and Chavarria identified Wyatt as the assailant. Officer Martinez clearly saw an arm come
out of the tray slot and throw a substance on him, and Officer Chavarria testified to the
same thing.

Susan Poole, a criminal investigator with the Inspector General's Office, testified
that the substance did not contain "feces." Rather, the stain on Officer Martinez's pants
contained urea, a component of urine. Texas Department of Public Safety chemist, Lori
McElhaney, testified that, in her scientific opinion, the substance was urine.

The defense theorized that Officer Martinez urinated on himself, or that he used
lotion, which contains urea, and then made contact with his pants leg. McElhaney testified
that the pants did have a distinct urine smell. No genetic analysis was done to conclude
whose urine was actually on the pants.

II. Standard of Review


Wyatt argues the evidence is legally and factually insufficient to show that he had
the specific intent required for the crime of harassment of public servant. See Tex. Penal
Code Ann. § 22.11(a)(1). When reviewing the legal sufficiency of the evidence, the Court
must view the evidence in the light most favorable to the verdict to determine whether a
rational juror could have found the essential elements of the crime beyond a reasonable
doubt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In contrast, when conducting a factual sufficiency review, we view the evidence in
a neutral light. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The Court
may find evidence to be factually insufficient in one of two ways: (1) when the evidence
supporting the verdict, though legally sufficient, is so weak that the verdict seems clearly
wrong and manifestly unjust, and (2) when the supporting evidence is outweighed by the
great weight and preponderance of the contrary evidence so as to render the verdict clearly
wrong and manifestly unjust. Id.; Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.
2007). 

III. Analysis

A. Legal Sufficiency 

 Wyatt argues that the jury came to conclusions based solely on mere speculation. 
He argues that the evidence is not sufficient to show that while confined in McConnell Unit
Correctional Facility, he possessed the specific intent required under the statute. 
Conversely, the State argues that the jury was permitted to infer intent and that direct
evidence of intent is not required. We agree with the State.

 Texas Penal Code section 22.11 provides:

 (a) A person commits an offense if, with the intent to assault, harass, or
alarm, the person:

 

 (1) while imprisoned or confined in a correctional or detention
facility, causes another person to contact the blood, seminal
fluid, vaginal fluid, saliva, urine, or feces of the actor, any other
person, or an animal; or


 (2) causes another person the actor knows to be a public servant
to contact the blood, seminal fluid, vaginal fluid, saliva, urine,
or feces of the actor, any other person, or an animal while the
public servant is lawfully discharging an official duty or in
retaliation or on account of an exercise of the public servant's
official power or performance of an official duty.


Tex. Penal Code Ann. § 22.11(a). It requires that a defendant intend to "assault, harass,
or alarm" a person by causing contact with bodily fluids. Tex. Penal Code Ann. §
22.11(a)(1). 

 The cases interpreting section 22.11 have not specifically defined the parameters
of the intent requirement. Section 6.03 of the penal code, however, explains that a person
"acts intentionally, or with intent, with respect to the nature of his conduct or to a result of
his conduct when it is his conscious objective or desire to engage in the conduct or cause
the result." Tex. Penal Code Ann. § 6.03 (Vernon 2003). Section 22.11 is a "result
oriented" crime--in other words, the statute focuses on the results of the conduct and not
the conduct itself, in that it does not criminalize the method of causing contact with bodily
fluid and the concurrent assault, harassment, or alarm required by the statute. See
Herrera v. State, 915 S.W.2d 94, 97-98 (Tex. App.-San Antonio 1996, no pet.). Thus, the
statute's culpable mental state requirement--intent--applies to the results of the conduct. 
See Washington v. State, 930 S.W.2d 695, 699 (Tex. App.-El Paso 1996, no pet.). In
other words, the State was required to prove that Wyatt (1) intended to cause urine to
contact Martinez, and (2) intended to assault, harass, or alarm Martinez. 

 Generally, intent may be proven by direct evidence, or it may be inferred from the
acts, words, and the conduct of an appellant. Guevara v. State, 152 S.W.3d 45, 50 (Tex.
Crim. App. 2004); see also Sanders, 2006 WL 23249, at *1-2. Juries are permitted to
make reasonable inferences from the evidence presented, and circumstantial evidence is
as probative as direct evidence in establishing the guilt of an actor, as long as the
individual inference is supported factually. Hooper, 214 S.W.3d at 14-15. Furthermore,
in a legal sufficiency review, "each fact need not directly and independently point to the
guilt of the appellant, as long as the cumulative force of all the incriminating circumstances
is sufficient to support the conviction." Id. at 13 (citing Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993); Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994);
Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)). 

 Hooper is particularly instructive on this point. In Hooper, two assailants tied a store
clerk in duct tape and robbed her. Id. at 12. They then met up with Hooper, the driver of
the getaway car. Id. A game warden, upon receiving a tip about a speeding red truck,
chased the accelerating vehicle and noticed two passengers in the backseat. Id. Hooper
stopped the truck and surrendered, but the two passengers fled on foot and fired a gunshot
in the direction of the game warden. Id. The passengers, their guns, the duct tape, and
the keys to the store were later recovered, and Hooper, as a co-conspirator, was convicted
of aggravated assault of a public servant. Id. at 13. On appeal, the court of appeals held
that the evidence was legally insufficient because there was "no direct evidence to
establish Hooper's knowledge of [the shooter's] . . . intent." Id. at 14. The court of criminal
appeals reversed, however, finding that even absent direct evidence, the jury was
"permitted to draw multiple reasonable inferences as long as each inference is supported
by the evidence presented at trial." Id. at 15. 

 The inference of intent made by the jury in this case is supported factually. Wyatt
knew that Officer Martinez was standing directly outside his cell because Officer Martinez
had just ordered Wyatt to place his hands through the slot so he could be handcuffed. 
Officer Teresa Chavarria testified to seeing Wyatt holding a Styrofoam cup filled with
"some liquid substance." Officer Chavarria saw appellant extend his arm through the slot
with a Styrofoam cup and throw some substance onto Officer Martinez. Also, Officer
Martinez clearly saw the substance that Wyatt threw make contact with his pant leg, and
the substance left a stain on Martinez's pants. Although neither officer immediately
identified the urine inside the cup, McElhaney testified that scientific analysis concluded
that the substance was in fact urine. Officer Martinez stated he was fearful of all the
diseases that are spread throughout the prison. Officer Martinez also testified that he "was
alarmed [by] just the fact [of having urine thrown on himself] . . . ."

 Considering all these facts collectively, a reasonable jury could infer that, at the time
Wyatt reached for the Styrofoam cup and threw the substance, he possessed the requisite
intent to cause the urine to contact Officer Martinez and to assault, harass, or alarm Officer
Martinez. (2) Wyatt's first issue is overruled.

B. Factual Sufficiency 

 Wyatt next argues that the evidence of intent is so weak that it renders the verdict
obviously incorrect and strikingly unjust. See Lancon, 253 S.W.3d at 705; Roberts, 220
S.W.3d at 524. The testimony of Officers Martinez and Chavarria, coupled with
McElhaney's analysis, is sufficient to prevent us from describing the verdict as "obviously
incorrect." 

 Moreover, the evidence in Wyatt's defense is not so overwhelming that it renders
the verdict clearly wrong and manifestly unjust. See Roberts, 220 S.W.3d at 524. At trial,
Wyatt's counsel surmised that Officer Martinez urinated on his own leg, thus making him
responsible for the urine on his trousers. Wyatt also argued that urea is found in
substances other than urine, and it is possible that the substance is lotion or some other
substance used by Officer Martinez. "The trier of fact is the sole judge of the weight and
credibility of the evidence." Grotti v. State, 209 S.W.3d 747, 758 (Tex. App.-Fort Worth
2007, pet. granted) (citing Tex. Code Crim. Proc. Ann. § 38.04 (Vernon 1979)). "Appellate
courts should afford almost complete deference to a jury decision when that decision is
based on an evaluation of credibility." Lancon, 253 S.W.3d at 705. 

 There is nothing in the record that supports Wyatt's theory; essentially, the theory
merely raised a possibility that Officer Martinez was being untruthful. However, the jury
was entitled to believe Officer Martinez, and we defer to its determination of Officer
Martinez's credibility. Id. Officer Martinez's testimony was not so weak as to undermine
our confidence in the verdict, nor is there overwhelming evidence to the contrary. 
Accordingly, Wyatt's second issue is overruled.IV. Conclusion

 For the reasons stated above, we overrule Wyatt's issues and affirm the trial court's
judgment.


 GINA M. BENAVIDES, Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this the 14th day of August, 2008.

1. Wyatt's sentence was increased from a third degree felony, punishable by a two-to-ten year
sentence and a $10,000 maximum fine to a second degree felony, punishable by a twenty year maximum
sentence and $10,000 maximum fine. See Tex. Penal Code Ann. § 12.42(a)(3) (Vernon 2006).
2. Several courts, in unpublished memorandum opinions, have held that showing that a defendant knew
that the bodily fluid would contact an officer, coupled with testimony from the victim that the victim felt
assaulted, harassed, or annoyed, was sufficient evidence to allow an inference of intent to assault, harass,
or alarm the person. See Rials v. State, No. 12-06-0262-CR, 2007 WL 1868520, at *2 (Tex. App.-Tyler June
29, 2007, no pet.) (mem. op.) (holding evidence was sufficient to support conviction where evidence showed
that defendant spat milk directly at officer and officer was "bothered" by defendant's actions); see also
Sanders v. State, No. 06-05-00104-CR, 2006 WL 23249, at *1-2 (Tex. App.-Texarkana Jan. 5, 2006, pet.
ref'd) (mem. op.) (holding evidence was sufficient where defendant knew that feces would likely contact an
officer); cf. Wheatley v. State, No. 10-02-00286-CR, 2004 WL 1418632, at *1 (Tex. App.-Waco June 23,
2004, no pet.) (mem. op) ("A person's immediate reaction to an event can be circumstantial evidence of the
defendant's intent to harass, alarm, and annoy that person; thus, it can be relevant.").